OPINION
{¶ 1} Defendant, Endia Baker, appeals from her conviction and sentence for assault.
 {¶ 2} On November 21, 2006, Defendant went uninvited to the home of Wilnessa Durham located at 3913 Alvin Avenue in Dayton. Defendant was looking for Wilnessa's sister, Wendy *Page 2 
Durham. Defendant had loaned her bank card to Wendy Durham who used that card to withdraw funds from Defendant's account and had not returned the card to Defendant. Wilnessa Durham was awakened by Defendant's loud banging on the front door and yelling threats to physically harm Wendy Durham. Wilnessa Durham stepped outside onto her front porch and told Defendant to leave. Defendant refused to leave and entered Wilnessa Durham's home via the front door without permission. Wilnessa Durham grabbed Defendant's hair in an attempt to remove her from her home. Defendant responded by punching Wilnessa Durham in the forehead. Durham immediately called police. Other members of Wilnessa Durham's family emerged from the home and confronted Defendant who left before police arrived.
 {¶ 3} Defendant was charged by complaint filed in Dayton Municipal Court with one count of assault, R.C. 2903.13(A), and one count of disorderly conduct, R.C. 2917.11(A)(1). Following a trial to the court Defendant was found guilty of assault but not guilty of disorderly conduct. The trial court sentenced Defendant to ninety days in jail, all suspended, and a two hundred dollar fine, all suspended. The court placed Defendant on six months of community control, and ordered her to perform twenty-five hours of community service and complete an anger management program. *Page 3 
 {¶ 4} Defendant timely appealed to this court from her conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT RESTRICTED APPELLANT'S RIGHT OF CROSS-EXAMINATION OF A WITNESS."
 {¶ 6} Defendant argues that the trial court abused its discretion in not allowing her to cross-examine a State's witness, Wendy Durham, on a matter Defendant claims was relevant to Durham's credibility, i.e. the details surrounding a dispute between Defendant and Wendy Durham over Durham's use and failure to return Defendant's bank card, which is why Defendant went to Wilnessa Durham's home in the first place, to confront Wendy Durham about the bank card. Although Defendant argues that she wanted to cross-examine Wendy Durham about this matter of the bank card to demonstrate Wendy Durham's bias, prejudice, interest and motive to misrepresent, and thus impeach Durham's credibility, the trial court refused to allow any inquiry into the details of this dispute surrounding the bank card because that separate matter between Defendant and Wendy Durham was not relevant to the issue in this case, whether Defendant assaulted Wilnessa Durham.
 {¶ 7} In State v. Foust, Montgomery App. No. CA20470, *Page 4 2005-Ohio-440, this court stated:
 {¶ 8} "{¶ 13} The constitutional right of cross-examination includes the right to impeach a witness's credibility. State v. Green,66 Ohio St.3d 141, 1993-Ohio-26; State v. Brewer (August 24, 1994), Montgomery App. No. 13866; Evid. R. 611(B). Unlike Federal Crim. R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim. R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, Ohio Evidence 2005 Courtroom Manual, at p. 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid. R. 616(A); State v. Ferguson (1983),5 Ohio St.3d 160, 450 N.E.2d 265. The denial of full and effective cross-examination of any witness who identifies Defendant as the perpetrator of the offense, is the denial of the fundamental constitutional right of confrontation essential to a fair trial.State v. Hannah (1978), 54 Ohio St.2d 84, 374 N.E.2d 1359; Brewer,supra.
 {¶ 9} "{¶ 14} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, *Page 5 
marginally relevant interrogation. Delaware v. Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. In re Fugate (2000), Darke App. No. 1512. We will not interfere with the trial court's decision in those matters absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.Id."
 {¶ 10} This case does not present a situation involving a classic credibility contest between the victim and Defendant where the State's case hinges upon the credibility of just one witness. Wendy Durham's testimony is not the only testimony in this case that identifies Defendant as the perpetrator of this assault and demonstrates the elements of that offense. The testimony of the victim, Wilnessa Durham, along with another eyewitness, Antoine Lucas, if believed, clearly satisfies the State's burden of proof, even if Wendy's testimony is completely disregarded. Thus, Wendy Durham's credibility, while important, was not a crucial issue in proving Defendant's guilt. More importantly, the collateral *Page 6 
matter Defendant wanted to cross-examine Wendy Durham about, whether Durham had misused and failed to return Defendant's bank card and as a result Defendant had contacted the police about Durham's possible theft of the card, while it might be marginally relevant to explain why Defendant initially went to Wilnessa Durham's home to confront Wendy Durham about the bank card, it had no relevance to whether on November 21, 2006, Defendant assaulted Wilnessa Durham. Such an extraneous matter as the dispute between Defendant and Wendy Durham over the bank card raises legitimate concerns over confusion of the issues vis-a-vis putting one of the State's witnesses, Wendy Durham, on trial.
 {¶ 11} Whatever marginal probative value Defendant's proposed inquiry concerning the bank card might have had in impeaching Wendy Durham's credibility, was far outweighed by the danger of unfair prejudice and confusion of the issues that could result from an inquiry into that area. Evid. R. 403(A). Under those circumstances, the limits the trial court placed upon the scope of cross-examination of State's witness Wendy Durham were reasonable and not an abuse of discretion.
 {¶ 12} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 13} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT *Page 7 
REFUSED TO ALLOW APPELLANT'S WITNESS TO TESTIFY ABOUT THE ALLEGED VICTIM'S PRIOR INCONSISTENT STATEMENTS."
 {¶ 14} Defendant argues that the trial court abused its discretion when it refused to allow Defendant to introduce extrinsic evidence. The extrinsic evidence offered by Defendant was the testimony of defense investigator Pat Tannreuther concerning prior inconsistent statements made by the victim, Wilnessa Durham. This evidence was offered for the purpose of impeaching Wilnessa Durham's credibility.
 {¶ 15} With respect to using extrinsic evidence to impeach a witness by a prior inconsistent statement, Evid. R. 613(B) provides:
 {¶ 16} "(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 17} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 18} "(2) The subject matter of the statement is one of *Page 8 
the following:
 {¶ 19} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 20} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;
 {¶ 21} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
 {¶ 22} It is not a prerequisite to impeachment by prior inconsistent statement that the prior statement be written or made under oath, notwithstanding any confusion or misunderstanding on the part of the prosecutor or the trial court about that matter. Evid. R. 613(A). Nevertheless, the extrinsic evidence offered by Defendant, the testimony of defense investigator Pat Tannreuther, to prove prior inconsistent statements by the victim, Wilnessa Durham, was only admissible under Evid. R. 613(B) if that evidence demonstrated self-contradiction, i.e. that what Durham told Tannreuther was different from what Durham testified to in court, which is the basis for the impeachment. Without conflicting or contradicting statements regarding the same facts or matter, there is no inconsistent statement and the *Page 9 
extrinsic evidence is properly excluded. State v. Mack,73 Ohio St.3d 502, 1995-Ohio-273. An examination of Wilnessa Durham's testimony and Pat Tannreuther's testimony demonstrates that Durham's statements to Tannreuther were not inconsistent with Durham's statements she made on the witness stand during the trial. Absent a prior inconsistent statement by Durham, Tannreuther's testimony was properly excluded.Id.
 {¶ 23} During cross-examination Wilnessa Durham denied making one statement to Pat Tannreuther that Defendant asked her about. Durham denied telling Tannreuther that "she stepped outside after Miss Baker (Defendant) was walking back towards her car." Subsequently, when Tannreuther attempted to testify that Durham did say that to her, the trial court sustained the State's objection. This testimony was excluded because of the leading nature of the question defense counsel asked Tannreuther. Furthermore, the evidence was not admissible under Evid. R. 613(B) as extrinsic evidence of a prior inconsistent statement because the subject matter of Durham's prior statement concerns a collateral matter. The statement does not concern a fact that is of any consequence to the determination of the action, other than Durham's credibility, it is not relevant to any substantive issue in the case, nor does the statement relate a fact that may be *Page 10 
shown by extrinsic evidence under other Rules of Evidence or under the common law of impeachment. Weissenberger, Ohio Evidence (2006), Section 613.3, 613.6. Accordingly, this evidence was properly excluded.
 {¶ 24} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 25} "THE TRIAL COURT WRONGLY OVERRULED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 26} When considering a Crim. R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261.The motion will be granted only when reasonable minds could onlyconclude that the evidence fails to prove all of the elements of theoffense. State v. Miles (1996), 114 Ohio App.3d 738.
 {¶ 27} A Crim. R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to *Page 11 
apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 29} To prove that Defendant was guilty of assault in violation of R.C. 2903.13(A), the State was required to prove that Defendant "knowingly caused or attempted to cause physical harm to another."
 {¶ 30} Knowingly is defined in R.C. 2901.22(B):
 {¶ 31} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 32} The eyewitnesses to this assault, Wilnessa Durham, Wendy Durham, and Antoine Lucas, all testified that Defendant *Page 12 
punched Wilnessa Durham in the face/head area. Although Wilnessa Durham suffered no visible injury, that is not required to prove assault because a mere attempt to cause physical harm is sufficient to complete the offense. Nevertheless, Wilnessa Durham testified that Defendant hit her in the forehead and the blow hurt and caused her to stagger.
 {¶ 33} Viewing the totality of this evidence in a light most favorable to the State, as we must, a rational trier of facts could find beyond a reasonable doubt all of the essential elements of assault. Defendant's conviction is supported by legally sufficient evidence and the trial court properly overruled Defendant's Crim. R. 29 motion for acquittal.
 {¶ 34} Defendant's third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 35} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), *Page 13 20 Ohio App.3d 172, 175:
 {¶ 37} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 38} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 39} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 40} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a *Page 14 
judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 41} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 42} Defendant argues that the trial court lost its way in finding her guilty of assault because the accounts of the three eyewitnesses were conflicting as to the details surrounding this incident, and therefore those witnesses were not credible. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the trial court here, to decide. DeHass. The testimony of the three eyewitnesses was consistent as to the pivotal issue in this case, the fact that Defendant punched Wilnessa Durham in the head/face area, and their testimony is not contrary to the guilty verdict. The trier of facts, the trial court, did not lose its way simply because it chose to *Page 15 
believe the State's witnesses rather than Defendant, which it had a right to do.
 {¶ 43} Reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the trial court lost it way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 44} Defendant's fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And DONOVAN, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Deirdre E. Logan, Esq.
Andrea G. Ostrowski, Esq.
 Hon. Carl Sims Henderson *Page 1